# IN THE COURT OF APPEALS OF IOWA

No. 23-0036
Filed March 29, 2023

**IN THE INTEREST OF M.S.,**
**Minor Child,**

**S.T., Mother,**
  Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the juvenile court order terminating her parental rights.
**AFFIRMED.**

Brooke J. Thompson of Miller, Zimmerman & Evans, PLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Lisa Kay Pendroy, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals the juvenile court order terminating her parental rights. We find termination of the mother's parental rights is supported by clear and convincing evidence, termination is in the child's best interests, the mother has not shown an exception to termination should be applied, and the court properly denied the mother's request for an extension of time. We affirm the termination of the mother's parental rights.

### I.      Background Facts & Proceedings

S.T.[1] is the mother and E.P. is the father[2] of M.S., who was born in 2019.[3] The mother has a long history of substance-abuse and mental-health problems. The mother admitted to being an IV methamphetamine user, beginning at age sixteen, and using up to two times per day from 2020 to the removal of M.S. She denied using when M.S. was in her home. But M.S. tested positive for methamphetamine at an extremely high level following removal.[4] The mother also admitted to previous use of cocaine, LSD, and heroin. She served forty-four months in federal prison after participating in the commission of a robbery. She was released in 2018 and reported that she relapsed in 2020. The child was removed from the mother's custody on December 2, 2021, because the mother was using methamphetamine and did not have stable housing. There were also

---

[1] The mother's petition on appeal gives her initials as S.T., but at the termination hearing her stated name corresponded to the initials S.S.

[2] The father consented to termination of his parental rights and is not a party to this appeal.

[3] The mother gave birth to two other children, who were ages ten and fourteen years old at the time of the termination hearing. Neither of these two children are in the mother's custody.

[4] M.S. also tested positive for THC following removal.

concerns of the mother dropping the child off with various friends for days at a time without providing necessities. And the mother had a history of exposing the child to inappropriate individuals, including one occasion when she and the child were passengers in a car stopped by law enforcement. At the time of the stop, the driver had a needle in his arm. The child was placed with the paternal grandparents, where she remained at the time of the termination hearing. The placement is willing to adopt.

The mother admitted she used methamphetamine three days before the second day of a contested removal hearing. The child was later adjudicated to be in need of assistance, under Iowa Code section 232.2(c)(2), (n), and (o) (2021). The mother was inconsistent in attending visitation. When she attended, she often brought unauthorized people with her. At times, the mother engaged in bizarre behaviors, such as painting her face, claiming staff was poisoning clients, and asserting that she was a spy. She made concerning comments to M.S. during supervised visits about "not letting the serpents win" and telling M.S. that she would eat with her, "so if it's poisoned, we'll both be poisoned." The mother entered two separate inpatient treatment programs in January 2022 but left both facilities shortly after admittance—the first discharge because of a conflict with another client and the second because of a refusal to follow medical advice. She began outpatient individual therapy to address her substance-abuse and mental-health issues.

On July 15, 2022, the State filed a petition seeking termination of the mother's parental rights.[5]  The termination hearing was held on August 30 and September 30.  The mother testified the last time she used drugs was on April 19, however, she had two sweat patches after that date positive for methamphetamine and amphetamine.  She also continued to associate with drug users.  She did not complete a psychological evaluation.

The juvenile court terminated the mother's parental rights under section 232.116(1)(h) and (*l*) (2022).  The court found the child could not be returned to the mother's custody, noting her continued association with unsafe persons, lack of stable housing, and unresolved mental-health issues.  The court found termination of the mother's parental rights was in the child's best interests.  The court also found none of the exceptions to termination located in section 232.116(3) should be applied.

The mother filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), asking the court to address her request for an extension of time to work on reunification.  The court rejected the request for an extension of time, finding the child needed permanency.  The mother now appeals.

## II.    Standard of Review

Our review of termination proceedings is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  The State must prove its allegations for termination by clear and convincing evidence.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "'Clear and convincing evidence' means there are no serious or substantial doubts as to

---

[5] The State filed the petition for termination of parental rights after the court instructed it to do so following a contested permanency hearing.

the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

### III. Sufficiency of the Evidence

The mother claims there is not clear and convincing evidence in the record to support termination of her parental rights. She asserts that the child could have been returned to her custody at the time of the termination hearing. She points out that she had stable housing and a job. The mother claims she has been sober since April 2022. And she adds she was meeting with a therapist to address concerns about her mental health.

"We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *Id.* at 435. We elect to focus on the termination of the mother's parental rights under section

232.116(1)(h).[6] One of the criteria in section 232.116(1)(h) is whether a child can be returned to the parent at the time of the termination hearing. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

The mother discounts the two positive sweat patches after April 2022, disputing the reliability of the testing. "[S]weat-patch tests are a generally reliable method for determining drug use." *In re A.C.*, No. 20-0736, 2020 WL 4516075, at *2 (Iowa Ct. App. Aug. 5, 2020) (quoting *In re S.B.*, No. 19-1170, 2019 WL 4301591, at *3 n.1 (Iowa Ct. App. Sept. 11, 2019)). The mother does not offer any compelling reasons to show that the results of the sweat patches were erroneous. *See id.* While the mother offered a negative hair stat test, an expert called by the State at the termination hearing discounted the value of such test based on the mother's hair dye.[7] We determine the evidence shows the mother tested positive for methamphetamine. Also, while the mother had been meeting with a therapist, she did not complete a recommended psychological evaluation to evaluate her mental-health status. We determine the child could not be safely returned to the

---

[6] Section 232.116(1)(h) provides for termination of parental rights when the court finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[7] The mother also provided some negative urinalysis tests. The State's expert, Dr. Leo Kadehjian, testified as to the limited length of time methamphetamine can be detected in this type of test or how it may be diluted.

mother's custody. *See In re T.W.*, No. 20-0145, 2020 WL 1881115, at \*3 (Iowa Ct. App. Apr. 15, 2020) (finding section 232.116(1)(h)(4) is satisfied if the evidence shows "[t]he child could not be safely returned at the time of the termination hearing"). We conclude clear and convincing evidence exists in the record to support termination of the mother's parental rights under section 232.116(1)(h).

## IV. Best Interests

The mother claims termination of her parental rights is not in the child's best interests. In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *P.L.*, 778 N.W.2d at 40. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

In addressing the best interests of the child, the juvenile court stated:

> The child's safety is a primary consideration. Unfortunately, the safety concerns that led to removal continue to exist today. Further, the child needs a long-term commitment from a parent to be appropriately nurturing, supportive of their growth and development, and who can meet their physical, mental, emotional and safety needs. No parent has demonstrated they are willing or able to fulfill this parental role. The parents' sporadic and lackluster engagement in services shows an inability or unwillingness to make necessary changes to have the child placed in their care.

The court noted the mother was unable to acknowledge her problems and so was unable to resolve those concerns. We agree with the court's findings and conclude termination of the mother's parental rights is in the child's best interests.

**V.     Exceptions**

As part of the mother's best-interests argument, she asserts that the court should have elected not to terminate her parental rights because the child was placed with a relative and due to the closeness of the parent-child relationship. Although the mother does not reference specific code sections, we interpret her arguments to invoke section 232.116(3)(a) and (c), which provides a court may elect not to terminate a parent's rights if a relative has custody of the child or "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

The exceptions to termination found "in section 232.116(3) are permissive, not mandatory." *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021) (citation omitted). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3) . . . ." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). The child's best interests remain our first consideration. *Id.* at 475.

The paternal grandparents have custody of M.S., and the mother suggests in passing that a guardianship could be established. Given M.S.'s young age, a guardianship would simply add another dimension of uncertainty to her young life story. "[A] guardianship is not a legally preferable alternative to termination." *Id.* at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Guardianships

can be modified or terminated. *See id.* at 477–478 (discussing the practical realities of guardianships); *In re Z.G.*, No. 20-1083, 2020 WL 7383528, at *3 (Iowa Ct. App. Dec. 16, 2020). We decline to impose this exception to termination.

And as we have often referenced, the existence of a bond between a parent and child is not enough to come within the statutory exception to termination of parental rights as not in the best interest of the child; the law requires clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship. Iowa Code § 232.116(3)(c); *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021).

The mother has not offered clear and convincing evidence that the termination of her parental rights would be detrimental to M.S. Since removal, the mother's visits have been fully supervised. And "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs." *In re D.W.,* 791 N.W.2d 703, 709 (Iowa 2010). Following our de novo review of this record, we conclude that the exception in section 232.116(3)(c) should not be applied to preclude termination.

## VI.    Extension of Time

The mother requests a six-month extension to work on reunification with the child. She states that she is addressing her substance-abuse and mental-health concerns and has a job and housing. The mother claims the child could be placed with her within six months.

A six-month extension of time may be granted under sections 232.104(2)(b) and 232.117(5) if parental rights are not terminated following a termination hearing.

*In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). An extension of time may be granted if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the child[ ] in a better home." *Id.* (citation omitted).

In the order concerning the rule 1.904(2) motion, the court denied the mother's request for a six-month extension of time. The court determined the child should not have to wait any longer for a permanent home. The court concluded this "was best achieved by way of termination and adoption." The mother has not fully addressed the problems that led to the removal of the child during the CINA proceedings. Given the extensive history of drug use and relapse, we find the mother has not shown that after an additional six months, the need for removal from the child's home would no longer exist. We determine the court properly denied the mother's request for an extension of time.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**